PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-3174
_____

UNITED STATES OF AMERICA

v.

ANTHONY BROOKINS,
                              Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 2:08-cr-00166-001
District Judge:  The Honorable Joy Flowers Conti
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 23, 2025

Before: HARDIMAN, AMBRO, and SMITH, *Circuit Judges*

(Filed: April 1, 2025)

Stephen H. Begler
Suite 610

505 Court Place
Pittsburgh, PA 15219
        *Counsel for Appellant*

Jonathan R. Bruno
Donovan J. Cocas
Laura S. Irwin
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219
        *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

SMITH, *Circuit Judge*.

Anthony Brookins violated provisions governing the term of supervised release he was serving. As a result, his supervised release was revoked and the District Court imposed a revocation sentence from which he appealed *pro se*. We then appointed the same counsel who had represented Brookins in his District Court proceeding to represent him on appeal. Counsel filed an *Anders* brief[1]—and a woefully inadequate one

_____

[1] An *Anders* brief, which is accompanied by counsel's motion to withdraw, advises the court of appeals that counsel has not

at that—and sought leave to withdraw.  For the reasons set out below, we will discharge counsel and will direct the Clerk of Court to appoint new counsel for Brookins.

## I.

In May 2009, a jury found Anthony Brookins guilty of both a firearm offense and a drug trafficking charge.  The District Court sentenced Brookins to 120 months and 240 months, respectively, with those sentences to be served concurrently.  The Court also imposed three- and ten-year periods of supervised release, respectively.  They, too, were to be served concurrently.  Pursuant to a First Step Act motion, the District Court later reduced Brookins's 240-month sentence on the drug trafficking offense to 180 months.  In December 2019 after his release from prison, Brookins began serving the supervisory period of his sentence.

In May of 2023, Brookins's probation officer filed a petition alleging that Brookins had violated the terms of his supervised release.  The petition listed five violations.  Violation number 1 alleged that Brookins had been charged in a Pennsylvania criminal complaint with simple assault and harassment arising out of a domestic incident involving his girlfriend.  Violation numbers 2, 3, and 4 alleged that on three occasions urine specimens he provided to the Probation Office had tested positive for cocaine.  Violation number 5 averred that Brookins had failed to participate in the substance abuse testing and treatment program required by the terms of his supervised release and stated that his noncompliance had

---

identified any non-frivolous issues to raise on review.  *Anders v. California*, 386 U.S. 738, 744 (1967).

resulted in his discharge from the program. A supplemental petition added violation number 6 stemming from another domestic incident. The underlying conduct led to the filing of additional Pennsylvania criminal charges against Brookins.

At a revocation hearing, Brookins admitted that he was guilty of committing "violation number 5" by failing to comply with the substance abuse treatment program. *United States v. Brookins*, Crim. No. 2:08-cr-00166-JFC, cm/ecf no. 198 at 6 (W.D. Pa. Nov. 21, 2023) (hereafter "Revoc. Tr."). For its part, the Government withdrew the other five alleged violations. The revocation hearing proceeded solely on violation number 5, a Grade C violation under the sentencing guidelines.

After Brookins admitted to violation number 5, the District Court turned to hearing about Brookins's background and specifically asked about his "current situation." Revoc. Tr. at 8. The probation officer informed the Court that Brookins had been residing with his girlfriend who had been the victim of the two domestic incidents alleged in the petition. The District Court inquired if drugs had been involved in the domestic incidents, and both Brookins and his probation officer acknowledged as much. In response to an inquiry directed to him from the Court, Brookins claimed that he wanted help to deal with his drug problem.

The District Judge stated that she had reviewed Brookins's earlier pre-sentence report and thought that "intensive inpatient drug treatment" might be the best means to help him address his substance abuse problem. Revoc. Tr. at 18. The Court noted that "people tend to fall back into the drug usage, they get back into their old habits." *Id.* at 24. She

then asked if Brookins was willing to participate in a long-term program, and he expressed his willingness to do so.

The District Court went on to find that Brookins had violated the condition of supervision which required his participation in substance abuse treatment, a Grade C violation. The Court sentenced Brookins to a total of 14 months of imprisonment, on both counts 1 and 2, followed by a term of supervised release. In addition, the District Court declared that upon release Brookins was to participate in an intensive drug treatment program and he was to have "no contact directly or indirectly" with the alleged victim of the domestic incidents. *Id.* at 26.

Brookins filed a *pro se* notice of appeal.[2] *United States v. Brookins*, No. 23-3174, cm/ecf no. 1 (3d Cir. Dec. 12, 2023)

---

[2] The District Court exercised jurisdiction under 18 U.S.C. §§ 3231 and 3583(e). Although Brookins's *pro se* notice of appeal was untimely when received by the Clerk's Office, he had placed that notice in the prison mail nine days after he was sentenced. Accordingly, under the prison mailbox rule, his notice of appeal was timely under Federal Rule of Appellate Procedure 4(b)(1)(A). *See Houston v. Lack*, 487 U.S. 266, 270-71 (1988) (holding that the timeliness of a *pro se* prisoner appeal is based on the date the prisoner delivers the notice of appeal to prison authorities). Moreover, the timeliness of a notice of appeal in a criminal case is not jurisdictional, and the Government has not challenged the timeliness of this appeal. *See United States v. Muhammud*, 701 F.3d 109, 111 (3d Cir. 2012). We thus exercise jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

(docket hereafter cited as COA3). In appointing appellate counsel, we looked to the same lawyer who had represented Brookins before the District Court. On the very day that we appointed that attorney, he moved to withdraw. He noted that Brookins had filed an untimely notice of appeal and also claimed that there were irreconcilable differences between lawyer and client. After we directed counsel to confirm that Brookins had received a copy of the motion to withdraw, counsel filed an amended motion to withdraw. In that motion, he advised this Court that he had filed what he styled a "notice of retirement to practice in this Court." COA3, cm/ecf no. 9. We responded by issuing a text order which requested clarification of counsel's retirement from "practice in this Court" and whether it meant he wished to be removed from the CJA panel in the District Court.[3] *Id.* no. 10. We also reminded him that attorneys appointed under the CJA are expected to continue their representation on appeal. *See* 3d Cir. L.A.R. 109.1. Counsel relented, informing us that he would continue to represent Brookins on appeal.

What followed was what counsel has characterized as an *Anders* brief. It was accompanied by the usual motion to withdraw from further representation of the appellant. Just a cursory review of that eleven-page document reveals its inadequacy. And our mention of its length is deceiving. The first page—a cover page—sets out the case caption. The

---

[3] CJA is an acronym for the Criminal Justice Act, which "requires district courts to provide legal counsel for criminal defendants charged with a felony when they are unable to pay for an attorney." *United States v. Konrad*, 730 F.3d 343, 346 (3d Cir. 2013) (citing 18 U.S.C. § 3006A(a)(1)(A)).

second page, page i, provides a table of contents. Page ii is a table of citations, listing five statutory sources, along with only one case citation: *Anders*. Counsel's certificate of membership in the bar and certification that a virus check had been performed appear on what has been paginated as "7", appearing near the end of the brief. The last of the eleven pages, paginated as "8", contains a certificate of service.

The remaining six pages constitute the "substance" of the brief. None of them contains a full page of text. The first of those six pages, paginated as "1", states the bases for jurisdiction in both the District Court and in this Court. The issue presented appears on the next page. The factual recitation follows and consists of two paragraphs. The first paragraph sets out a procedural summary of Brookins's underlying criminal convictions. The second addresses Brookins's violation of supervised release but does not identify the specific violation—the violation to which Brookins had admitted. Nor is there any discussion of what took place during the revocation hearing, other than that Brookins had "admitted to a 'C' violation" and received a "Guideline sentence." *Anders* Br. at 3. There was no mention that the District Court sentenced him to 14 months of imprisonment nor to the additional time that Brookins would serve on supervised release. The "*Anders* brief" is also silent with respect to the new special conditions of supervised release which the District Court imposed. That Brookins was to have no contact with the alleged victim and that he was to participate in an intensive drug treatment program went unmentioned.

The summary of argument section on the seventh of the eleven-page document, paginated as number four, repeats that

Brookins admitted to a supervised release violation and that he received a "guideline sentence." *Anders* Br. at 4. This section advised that no challenges were raised as to whether the admission was knowing and voluntary. The final sentence of this summary of argument simply states: "In short, there is no issue of arguable merit in this case and Counsel asks leave to withdraw." *Id.*

The argument section begins (and ends) on the eighth page, which is numbered as "5". It consists of a lone paragraph. It claims that counsel had conducted "a careful review" and "concluded that any further proceedings on behalf of [Brookins] would be wholly frivolous and without arguable merit within the meaning of *Anders*." *Anders* Br. at 5. Although counsel represented that he had reviewed the record and transcripts in the case, the appendix submitted along with the brief contains no more than the notice of appeal, the judgment rendered after the revocation hearing, the revocation petition itself, and the minutes from the revocation proceeding. It does not include a transcript of the revocation hearing. That was later provided by counsel after the Government filed a motion to compel the filing of the transcript. *See* COA3, cm/ecf nos. 45, 49. Brookins himself also filed the transcript after he submitted an informal *pro se* brief.[4]

A conclusion section appears at "6".

Brookins's informal brief takes issue with the following: the imposition of the no-contact order; the Court's

_____

[4] When counsel has filed an *Anders* brief, he must serve it upon his client, who "may also file a brief in response pro se." 3d Cir. L.A.R. 109.2(a).

8

imposition of the maximum term of imprisonment under the guideline range; the reasonableness of the inpatient drug treatment requirement; whether the District Court procedurally erred by failing to place on the record every condition of supervised release; and whether he received all of the discovery material to which he was entitled.

The Government responded with a comprehensive, 49-page brief that scoured the record for any issue that might be appealable. It thoroughly explained why, in its view, there were no issues of arguable merit. In short, the Government did appellate counsel's job for him.

## II.

Given the gross inadequacy of the representation we have just recited in detail, we take this opportunity to once again examine *Anders v. California* and to remind all who represent criminal defendants on appeal—and to remind ourselves—of the requirement that indigent defendants be afforded constitutionally adequate legal representation. *Gideon v. Wainwright* made clear the "fundamental nature of the right to counsel" and declared that, "in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." 372 U.S. 335, 343, 344 (1963). Accordingly, indigent defendants have the right to court-appointed counsel.

Several years after *Gideon*, the Supreme Court considered the constitutional adequacy of the procedure California courts required an indigent defendant's court-appointed counsel to follow in advising an appellate court that

an appeal lacks merit. *Anders*, 386 U.S. at 740-41. Before addressing the merits of the issue, the Supreme Court highlighted its concern—reaching back to the 1950s—about "discrimination against the indigent defendant." *Id.* at 741. After reciting its precedent, including *Gideon*, the Court went on to declare that it "continue[d] to adhere to these principles."[5] *Id.* at 742.

The *Anders* Court then turned to the statement of appellate counsel that there was no merit to the appeal before it. Writing for the majority, Justice Clark declared that "counsel's bare conclusion" that his client's appeal had no merit was "not enough." *Id.* His opinion went on to make clear that the "constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client." *Id.* at 744. *Anders* teaches that, as an advocate, counsel must

> support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal.

---

[5] *Anders*, 386 U.S. at 741-742 (citing *Griffin v. Illinois*, 351 U.S. 12 (1956); *Douglas v. California*, 372 U.S. 353 (1963); *Johnson v. United States,* 352 U.S. 565 (1957); *Ellis v. United States*, 356 U.S. 674, 675 (1958); and *Gideon*, 372 U.S. at 344).

10

*Id.* It is then "the court—not counsel," that "proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous." *Id.*

In the context of an *Anders* brief, the terms "wholly frivolous" and "without merit" mean "that the appeal lacks any basis in law or fact." *McCoy v. Ct. of Appeals of Wis., Dist. 1*, 486 U.S. 429, 438 n.10 (1988). If there is an issue that is "arguable" on its merits, then the appeal is not frivolous. *Anders*, 386 U.S. at 744; *Smith v. Robbins*, 528 U.S. 259, 266 (2000).

In *Penson v. Ohio*, the Supreme Court considered whether Ohio's procedure for apprising an appellate court of a meritless appeal complied with the process set out in *Anders*. 488 U.S. 75, 77-78 (1988). The Court reiterated the importance of an indigent defendant's having counsel in his "first appeal as of right." *Id.* at 79. It characterized *Anders* as setting out "certain safeguards" that would avoid denying the indigent appellant the right to "fair representation." *Id.* at 80. The first safeguard is the "conscientious examination of the case" by appointed counsel. *Id.* (internal quotation marks and citation omitted). When such scrutiny leads appointed counsel to move to withdraw from the case on the basis that the appeal is without merit, the *Anders* brief becomes the second safeguard. *Id.*

As the Supreme Court has described it, the "so-called '*Anders* brief' serves the valuable purpose of assisting the court in determining both that counsel in fact conducted the required detailed review of the case and that the appeal is indeed so frivolous that it may be decided without an adversary presentation." *Penson*, 488 U.S. at 81-82. The Court has

11

further explained that, in the absence of a compliant *Anders* brief, the reviewing court is deprived "of the assistance of an advocate in its own review of the cold record on appeal." *Id.* at 82.

The remaining safeguard is then the responsibility of the appellate court, which must conduct a "full examination" of the case. *Id.* at 80 (quoting *Anders*, 386 U.S. at 744). That examination will determine whether the court goes on to review the merits of the appeal without counsel's assistance or instead appoints new counsel to represent the indigent defendant. *Id.*

In *United States v. Langley*, our court recounted that we "have addressed the expectations of counsel when seeking to withdraw under *Anders* primarily in three cases." 52 F.4th 564, 570 (3d Cir. 2022) (citing *United States v. Marvin*, 211 F.3d 778 (3d Cir. 2000); *United States v. Youla*, 241 F.3d 296 (3d Cir. 2001); and *United States v. Coleman*, 575 F.3d 316 (3d Cir. 2009)). For purposes of the matter before us, *Marvin* and *Youla* are most informative as they addressed "the contours of the court's and counsel's obligations" in light of *Anders.*[6] *Marvin*, 211 F.3d at 780. We deemed the counseled *Anders* brief in *Marvin* to be inadequate because it failed to demonstrate that counsel had fully "explored all possible issues

---

[6]*Coleman* is of limited importance to our inquiry because, although it applied the analysis articulated in *Marvin* and *Youla*, it did not set out any further guideposts for reviewing an *Anders* brief.

for appeal" and did not explain "why those issues that he [did] address [were] legally frivolous."[7]  *Id*. at 781.

We also deemed the *Anders* brief in *Youla* to be inadequate.  241 F.3d at 300.  There, we described both counsel's duties when deciding what kind of brief to submit and the steps our Court should employ when presented with an *Anders* brief.  As to counsel's duties, we instructed that they "are (1) to satisfy the court that counsel has thoroughly examined the record in search of appealable issues, and (2) to explain why the issues are frivolous."  *Id.* (citing *Marvin*, 211 F.3d at 780).  As a reviewing court, our inquiry is "twofold: (1) whether counsel adequately fulfilled [his duties]; and (2) whether an independent review of the record presents any nonfrivolous issues."  *Id.* (citing *Marvin*, 211 F.3d at 780).

Whether counsel has satisfied his "*Anders* obligation" determines the scope of our review at the second step of our inquiry.  *Langley*, 52 F.4th at 569.  Once the *Anders* brief is filed, our examination of the record is plenary, and we conduct "a full examination of all the proceedings to decide whether the case is wholly frivolous."  *Id.* at 568 (quoting *Penson*, 488 U.S. at 80).  When we conclude that counsel has satisfied his or her duties, we may limit our plenary review "to the issues counsel raised."  *Id.* at 569 (citing *Youla*, 241 F.3d at 301).

The defendant in *Langley* had pleaded guilty.  In response to the submission by his counsel of an *Anders* brief,

---

[7] In *Marvin*, we noted that Third Circuit Local Rule 109.2 "tracks the *Anders* suggestion" regarding how counsel should proceed when he has failed to identify any arguable issues of merit.  211 F.3d at 780.

13

Langley took advantage of the opportunity to file a *pro se* informal brief under our court's Local Rule.[8]  Counsel's brief did not address the issues raised in Langley's *pro se* brief.  We recognized that our case law addressing appeals that involve both an *Anders* brief and a *pro se* informal brief had not been consistent, faulting counsel at times for not anticipating issues raised by the defendant *pro se* even though an *Anders* brief is filed prior to any submission by the defendant.  52 F.4th at 571-72.  We "clarif[ied] that counsel's failure to address issues raised in her client's *pro se* brief does not render an *Anders* brief inadequate *per se*.  It may be relevant, however, in illustrating a more general failure to identify and discuss potentially appealable issues."  *Id.* at 573 (footnote omitted).  "[U]ltimately," we declared, "our adequacy determination must be made on a case-by-case basis."  *Id.* at 573-74.

Having addressed in *Langley* considerations to be taken into account when there is both an *Anders* brief and a submission from the defendant *pro se*, we turned to the adequacy of counsel's brief.  That brief addressed the validity of Langley's guilty plea and the sentence imposed.[9]  We

_____

[8] *See* 3d Cir. L.A.R. 109.2(a).

[9] When an *Anders* brief follows the entry by the defendant of a guilty plea and the entry of a final judgment after sentencing, the issues that the defendant may raise on direct appeal are ordinarily limited to whether the defendant could be haled into court at all, the validity of the guilty plea, and the legality of the sentence.  *See United States v. Broce*, 488 U.S. 563, 569, 575 (1989); *see also Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he

concluded that counsel's *Anders* brief "adequately explain[ed] why there [were] no non-frivolous appealable issues regarding the sufficiency of Langley's plea hearing and the propriety and length of Langley's sentence." 52 F.4th at 574. We noted that, in the brief, counsel reviewed how the guilty plea colloquy satisfied the requirements of Federal Rule of Criminal Procedure 11 and that it was made knowingly and voluntarily.[10] *Id.* Counsel also had explained that the defendant could challenge his sentence under 18 U.S.C. § 3742(a) only on certain grounds and that he could not demonstrate that Langley's sentence was "(1) imposed in violation of law; (2) imposed as a result of an incorrect application of the Federal Sentencing Guidelines; (3) greater than the sentence specified in the applicable guideline range; or (4) plainly unreasonable." *Id.* Given counsel's steady march through the record, we concluded that he had "scoured the record" and fulfilled his *Anders* obligations. *Id.* at 575.

## III.

We have yet to address in a precedential opinion the adequacy of an *Anders* brief filed in an appeal from revocation of supervised release where a defendant has admitted a

---

is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); 18 U.S.C. § 3742(a).

[10] *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969) (holding that, because a guilty plea "is itself a conviction" and the defendant waives several constitutional rights, the record in such a change of plea proceeding must show that the defendant knowingly and voluntarily waived his rights).

violation.  We consider *Langley*'s focus on the sufficiency of a plea hearing and the propriety and validity of a sentence to be instructive.  We turn first to the revocation proceeding.

### A.

In determining the sufficiency of a revocation proceeding, we are mindful that the violation at issue may be one that does not also constitute a criminal offense.  *Johnson v. United States*, 529 U.S. 694, 700 (2000).  *Morrissey v. Brewer* established that the "revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply."  408 U.S. 471, 480 (1972).  Nonetheless, *Morrissey* held that certain "minimum requirements of due process" apply in revocation proceedings given their potential for depriving a parolee of the conditional liberty he has enjoyed.  *Id.* at 489.

The minimum protections of due process recognized in *Morrissey* have been extended to proceedings related both to probation, *see Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973), and supervised release, *see United States v. Manuel*, 732 F.3d 283, 291 (3d Cir. 2013) (citing *Morrissey*, 408 U.S. at 484; *Scarpelli*, 411 U.S. at 781-82).  In *Manuel*, we noted that "Federal Rule of Criminal Procedure 32.1 was promulgated to address [the] due process concerns" arising in a revocation proceeding.  732 F.3d at 291.  Similar to *Langley*'s assessment of the sufficiency of the plea hearing by considering a district court's compliance with Rule 11, we conclude that an *Anders* brief filed on appeal from a revocation proceeding should contain a discussion of the district court's compliance with Rule 32.1, particularly subsection (b)(2) addressing revocation hearings.

16

Compliance with Rule 32.1 does not end the inquiry into the sufficiency of a revocation hearing. Absent from Rule 32.1(b)(2) is any reference to the standard of proof applicable in a revocation proceeding. That standard is provided, though, in § 3583(e)(3). It specifies that a District Court must "find[]" a violation of supervised release "by a preponderance of the evidence." 18 U.S.C. § 3583(e)(3). So at a minimum, the applicable evidentiary standard requires a showing that there is a factual basis for any findings that support a violation. *See* Fed. R. Crim. P. 32.1(b)(2)(B) (requiring "disclosure of the evidence against the person"); *cf.* Fed. R. Crim. P. 11(b)(3). As *Morrissey* instructed, the informal hearing must be "structured to assure that the finding of a . . . violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the [defendant's] behavior." 408 U.S. at 484. Such a factual basis provides the means by which a district court may assess whether a defendant understands and knows what is at stake, particularly if he is not contesting a violation. Accordingly, we hold that an *Anders* brief filed pursuant to an appeal from the revocation of supervised release, and after a defendant has admitted his culpability, should address not only compliance with Rule 32.1 but also whether a preponderance of the evidence has demonstrated a factual basis for the charged violation and whether the defendant knew and understood the consequences of admitting to the violative conduct.

We recognize that *Boykin v. Alabama*'s requirement that a guilty plea must be knowing and voluntary to satisfy due process has yet to be extended to admissions made by a supervised releasee in revocation proceedings. *See Boykin*, 395 U.S. at 242, 243 n.5. But we have held that the knowing

17

and voluntary standard applies to the waiver of the nonconstitutional right to counsel in a revocation proceeding as set forth in Rule 32.1(a)(3)(B). *Manuel*, 732 F.3d at 291. There, we found the reasoning of our sister courts of appeals to be persuasive: "that, in order for due process to be satisfied in the context of a . . . revocation hearing, the defendant's waiver of rights under Rule 32.1 must be knowing and voluntary under a 'totality of the circumstances.'" *Id.* (citing *United States v. Hodges*, 460 F.3d 646, 651-52 (5th Cir. 2006); *United States v. Correa–Torres*, 326 F.3d 18, 23 (1st Cir. 2003); *United States v. LeBlanc*, 175 F.3d 511, 515-17 (7th Cir. 1999)). "This standard does not require 'rigid or specific colloquies with the district court.'" *Id.* (quoting *Hodges*, 460 F.3d at 651). Rather, in applying that standard, we considered the totality of the circumstances and determined that Manuel's "waiver of counsel at his revocation hearing was knowing and voluntary." *Id.*; *see also United States v. Pelensky*, 129 F.3d 63, 68 (2d Cir. 1997) (joining other courts of appeal in rejecting the need for a "formal waiver from a defendant who has admitted to violating the terms of probation or supervised release").

We acknowledge that, unlike in *Manuel*, we do not analyze whether Brookins adequately waived any specific right during his revocation hearing. Rather, we review the sufficiency of a revocation hearing conducted under both Rule 32.1 and § 3583(e)(3). Nonetheless, we conclude that the knowing and voluntary standard endorsed in *Manuel* for the waiver of nonconstitutional rights protected by Rule 32.1 should be addressed in an *Anders* brief when assessing the sufficiency of a defendant's admission to a violation of supervised release made during a revocation proceeding.

18

B.

Second, an *Anders* brief filed in an appeal challenging a district court's revocation of supervised release should address the legality of any revocation sentence imposed. This component of an *Anders* brief is dictated by both § 3583(e)(3), which permits revocation and sentencing "after considering" certain sentencing factors in § 3553, as well as by § 3742(a), which allows a defendant to appeal a sentence.

The penalties that may be imposed for a violation of supervised release may include not only imprisonment but also an additional term of supervised release, together with such conditions as reasonably relate to certain sentencing factors in § 3553. *See* 18 U.S.C. §§ 3583(d)(1), (e)(3). Part B of Chapter 7 of the applicable Guidelines Manual prescribes the penalties for a defendant found in violation of a term of supervised release. Guideline § 7B1.1 classifies such violations as Grades A, B, or C. And the advisory Revocation Table in U.S.S.G. § 7B1.4 informs sentencing by providing ranges for imprisonment based on the defendant's criminal history category and the grade of the violation. *United States v. Dees*, 467 F.3d 847, 853 (3d Cir. 2006). Scrutiny of a revocation sentence requires consideration of all the components of a sentence, including any addition to and/or modification of the conditions of supervised release. And, as we established in *United States v. Bungar*, revocation sentences are reviewed for reasonableness. 478 F.3d 540, 542 (3d Cir. 2007).

Accordingly, in assessing the adequacy of an *Anders* brief with respect to a revocation sentence, counsel should address the sentence for its legality and validity under §

19

3583(e), § 3742(a), and Chapter 7 of the U.S. Sentencing Guidelines.

## C.

Finally, as with an *Anders* brief filed in the wake of a guilty plea, our review of the adequacy of an *Anders* brief in a revocation proceeding must include whether the defendant has taken advantage of the opportunity to file a *pro se* informal brief as permitted under Third Circuit Local Rule 109.2(a). In *Langley*, we noted that a defendant's *pro se* submission can "illustrate counsel's more general failure to identify or discuss potentially appealable issues, or to highlight [counsel's] failure to raise non-frivolous issues." 52 F.4th at 572. In short, "silence [in counsel's brief] concerning issues raised in a client's *pro se* brief may be relevant to the court's adequacy determination." *Id.*

## IV.

Having specified the essentials of an *Anders* brief filed after both a defendant's admission of his breach of supervised release conditions,[11] and the consequent revocation of his supervised release, we turn to whether counsel met his *Anders* obligations in the case before us.[12] Our earlier description of

---

[11] In *Dees*, we instructed that "[a] district court's primary consideration in handing down a revocation sentence is the defendant's breach of trust." 467 F.3d at 853.

[12] Whether an *Anders* brief is adequate to assist us in our review presents a question of law for which our review is plenary. *See United States v. Moscahlaidis*, 868 F.2d 1357, 1360 (3d Cir.

counsel's sparse *Anders* brief renders lengthy discussion of that question unnecessary.  We conclude that counsel utterly failed to meet his obligations under *Anders*.

The *Anders* brief filed in this appeal contained six pages which, arguably, could be described as "substantive."  Yet none of those pages set forth any factual recitation relating to either the alleged violation of supervised release or the revocation hearing itself.  Although the submission indicated that Brookins admitted a Grade C violation and received a guideline sentence, we were left to guess what the violative conduct had been and what type of penalty had been imposed by the District Court.  Instead of identifying a single issue and explaining why it lacked merit, the brief offered only counsel's reassurance that there was nothing to Brookins's appeal.  That is precisely the sort of "bare conclusion" the *Anders* Court

---

1989) (applying plenary review over legal question of whether the government violated a plea agreement).

declared to be *"not enough."*[13] 386 U.S. at 742.  Accordingly, we conclude that counsel's *Anders* brief is unacceptable.[14]

## V.

Under our Local Rule, if we reject an *Anders* brief as "inadequate to assist the court in its review," we are to "appoint substitute counsel, order supplemental briefing and restore the case to the calendar." 3d Cir. L.A.R. 109.2(a).  We explained in *Marvin* that in rejecting an *Anders* brief we are not "express[ing] any opinion as to the merits" of the underlying appeal.  211 F.3d at 782.  We are "merely not[ing] that we are not yet ready to decide this case rudderless, without the guidance of counsel." *Id.*

Here, although we have characterized counsel's *Anders* brief as "woefully inadequate," we do have before us both

---

[13]  In focusing, as *Youla* instructs, on the substantive inquiry of whether counsel's scrutiny revealed any appealable issues, we have highlighted the shortcomings of the factual and legal analysis in the brief.  We note, however, that consideration of the appendix submitted by counsel also informs whether counsel has met his *Anders* obligations.  Here, the absence of the revocation hearing transcript from the initial appendix ensured that we had no basis on which to conclude that counsel had himself "scoured the record" before drafting the *Anders* brief.  *Langley*, 52 F.4th at 575.

[14] Because the bare bones of the *Anders* brief before us compel the conclusion that it falls well short of what is acceptable, we do not consider whether Brookins's *pro se* informal brief sheds any light on whether counsel has fulfilled his *Anders* obligations.

Brookins's *pro se* informal brief and the Government's comprehensive evaluation of whether Brookins's appeal is without merit.  While we could conceivably proceed to consider the merits, we believe it unwise to do so.  Such a course would tacitly condone the filing of an inadequate *Anders* brief when the Government, as we have put it, "did appellate counsel's job for him."

The stunted appellate process we are confronted with is hardly representative of how our adversary system is designed to work.  Were we to leapfrog over what is effectively the lack of an *Anders* brief, we would deprive both Brookins and this court of what the *Anders* Court sought to assure: "that indigent defendants have the benefit of what wealthy defendants are able to acquire by purchase—a diligent and thorough review of the record and an identification of any arguable issues revealed by that review." *McCoy*, 486 U.S. at 439 (discussing *Anders*, 386 U.S. at 744).  And it is just such a review that "assists the court in making the critical determination" of whether the appeal presents any arguable issue of merit.  *Id.*

Because we have not been provided the assurances that *Anders* was designed to provide a reviewing court, we will discharge defense counsel.  We will also direct the Clerk of Court to appoint new counsel whose job it will be to conduct the conscientious examination required by *Anders* and to then proceed accordingly.[15]

---

[15] In *Langley*, we observed that the courts of appeals have resolved *Anders* appeals by either dismissing the appeals or affirming the district court's judgment.  52 F.4th at 568 n.2.  Although we neither affirm nor dismiss here upon

23

## VI.

We remain mindful of this exhortation from the Supreme Court: "The need for forceful advocacy does not come to an abrupt halt as the legal proceeding moves from the trial to appellate stage." *Penson*, 488 U.S. at 85. While adversarial zeal may be more difficult for counsel to muster while writing an *Anders* brief than it is when arguing for an acquittal, our system demands from counsel a consistent commitment to a client and to the court at every stage of judicial proceedings. Counsel must keep in mind that an *Anders* brief "is a device for assuring that the constitutional rights of indigent defendants are scrupulously honored." *McCoy*, 486 U.S. at 444. Accordingly, the vigor of criminal counsel's advocacy must not waver in an appeal just because the case appears straightforward and may, at first blush, be a candidate for an *Anders* brief. That is because an *Anders* brief "provides an independent inducement to counsel to perform a diligent review." *Penson*, 488 U.S. at 81 n.4. In the course of that review, counsel may just discover an issue of arguable merit. *Id.*

## VII.

In sum, an *Anders* brief filed following an appeal of the revocation of supervised release and the imposition of a

---

determining the *Anders* brief to be inadequate, we note that, in this circuit, when an *Anders* brief has been deemed to be adequate and there have been no non-frivolous issues presented, the proper disposition is to affirm the judgment of the District Court.

revocation sentence after a defendant has admitted a violation must at least address the sufficiency of the revocation proceeding and the legality and propriety of the sentence. First, counsel's explanation concerning the revocation proceeding itself requires a discussion of whether that proceeding satisfied Federal Rule of Criminal Procedure 32.1(b)(2) and 18 U.S.C. § 3583(e), as well as whether any admission by the defendant was knowing and voluntary. Second, in explaining that a challenge to a revocation sentence is frivolous, the *Anders* brief must address whether the sentence complied with § 3583(e), § 3742(a), and Part B of Chapter 7 of the applicable Guidelines Manual. Counsel's examination of a sentence's legality and its propriety should also consider whether it is reasonable. Without both of these explanations, an *Anders* brief filed in an appeal from revocation of supervised release and the imposition of a revocation sentence will be inadequate.